1

2

3                    UNITED STATES DISTRICT COURT

4                          DISTRICT OF NEVADA

5   MAZEN ALOTAIBI                        Case No. 2:21-cv-01281-GMN-BNW

6                        Petitioner,              **ORDER**

7         v.

8   BRIAN WILLIAMS, et al.,[1]

9                        Respondents.

10

11         Counseled Petitioner Mazen Alotaibi was sentenced to life in prison with the possibility

12  of parole after 35 years after he was found guilty in Nevada state court of Burglary, First-degree

13  Kidnapping, Sexual Assault with a Minor Under the Age of 14, Lewdness with a Child Under

14  the Age of 14, and Coercion. ECF No. 20-20.  Alotaibi seeks a writ of habeas corpus under 28

15  U.S.C. § 2254 based on the claim that his trial counsel was ineffective by failing to advise him

16  about and request a jury instruction on the lesser-related offense of Statutory Sexual Seduction.

17  ECF No. 1.  The Court finds that habeas relief is not warranted, so it denies Alotaibi's Petition,

18  denies him a Certificate of Appealability, and closes this case.

19  I.    **BACKGROUND**[2]

20        A.    **Relevant facts underlying Alotaibi's conviction**[3]

21        Alotaibi's conviction is the result of events that occurred in Las Vegas, Nevada, on

22  December 31, 2012.  Alotaibi is a Saudi Arabian national who was a pilot in the Saudi Air Force

23

24        [1] The Nevada Department of Corrections inmate database states that Alotaibi is
    incarcerated at Lovelock Correctional Center.  Presently, Nethanjah Breitenbach is the Warden for
25  that facility.  At the end of this order, the Court directs the Clerk of the Court to substitute
    Nethanjah Breitenbach as a respondent for Respondent State of Nevada. *See* Fed. R. Civ. P. 25(d).
26        [2] The Court makes no credibility determinations or other factual findings about the truth or
    falsity of this summary of the evidence from the state court.  This summary is merely a backdrop
27  to the issues presented in this case.  Any failure to mention a specific piece of evidence does not
    signify that the Court overlooked it in considering Alotaibi's claim.
28        [3] These facts are taken from the trial transcripts. ECF Nos. 1-1 at 164–224, 1-2, 1-3, 1-4-,
    1-5, 1-6 at 2–84.  The Court generally cites to these exhibits for this entire subsection.

stationed in San Antonio, Texas, and learning English so he could receive technical training on aircraft that Saudi Arabia bought from the United States.  In late December 2012, Alotaibi traveled from Texas to California and then to Las Vegas, Nevada, with friends and acquaintances to celebrate the New Year.  Alotaibi and his group arrived in Las Vegas around 2:00 a.m. on December 31, 2012.  Alotaibi and his group drank at the Palms casino and Olympic Garden strip club and, after dawn, arrived at the Circus Circus hotel where they were staying.

A.J.,[4] a 13-year-old boy, was staying at the Circus Circus hotel with his grandmother to celebrate the New Year.  A.J. discovered that his friend was also staying at the hotel, and they made plans to have breakfast together on December 31. When A.J. arrived at his friend's hotel room on the sixth floor that morning, he was told she was still sleeping.  While A.J. waited for her to wake, he wandered the hotel and eventually returned to the sixth floor and sat on the couch near the elevator.

Alotaibi exited the elevator while A.J. was waiting and the two spoke.  Alotaibi's eyes were pink, and he smelled like marijuana.  A.J. followed Alotaibi into the hall and asked if he had any marijuana.  Alotaibi said yes, and they went to Alotaibi's room to get it.  Other people were also in the room.  Someone asked A.J. his age and A.J. responded that he was 13.

Alotaibi and A.J. left the room to go outside to smoke marijuana.  In the elevator on the way down, Alotaibi kissed A.J.'s neck.  While Alotaibi and A.J. were smoking marijuana in an alley, Alotaibi kissed A.J.'s face.  When A.J. stepped away, Alotaibi pulled him closer.

On the way back to the elevator, Alotaibi told A.J. he'd give him money and marijuana in exchange for sex.  A.J. agreed, but only to trick Alotaibi; he just wanted to buy marijuana.  When they returned to Alotaibi's room, Alotaibi told A.J. to go into the bathroom.  After speaking to the other people in the room, Alotaibi entered the bathroom and put marijuana on the counter.

Alotaibi repeated that he wanted to exchange marijuana and money for sex.  A.J. verbally refused and tried to leave the bathroom.  Alotaibi responded by increasing the money offered and

---

[4] The Court refers to the minor only by his initials. *See* Nev. Loc. R. IC 6-1(a)(2).

1    started kissing A.J., who backed away.  Alotaibi then removed A.J.'s t-shirt, pushed down A.J.'s

2    pants, made A.J. bend over, and forced his penis in A.J.'s mouth.

3         A.J. yanked away, removing Alotaibi's penis from his mouth.  A.J. wanted to leave, but

4    Alotaibi was between him and the door; he didn't know what to do.  Alotaibi pushed A.J. to the

5    ground on his stomach and placed shampoo on his penis and A.J.'s anus.  Then, Alotaibi penetrated

6    A.J.'s anus with his penis twice before A.J. pushed Alotaibi away, got his clothes on, and ran to

7    the elevator.

8         A.J. immediately told a security officer in the hotel that he had been raped and told the

9    hotel's security manager and security supervisor that he had gone willingly into Alotaibi's room

10   to get high when it happened.  A.J. later told detectives that Alotaibi had dragged him through the

11   hall by his clothes and into the room, and omitted that he had smoked marijuana with Alotaibi.

12   Surveillance video revealed that Alotaibi didn't drag A.J. down the hall or pull him into the room.

13   A.J. testified that he lied to the detectives because his grandmother was present when he was

14   speaking to them, and he didn't want her to know that he smoked marijuana or to get in trouble

15   for smoking it.

16        The State's forensic expert testified that Alotaibi's DNA was found on A.J.'s testicles and

17   inside A.J.'s boxer shorts.  The registered nurse who examined A.J. testified that he had multiple

18   tears on his anus that were consistent with the forced digital and penile penetration of the anus that

19   he described to her.  The nurse observed that a laceration on A.J.'s anus was freely bleeding, and

20   another laceration had clotted blood.  She also observed that A.J. had bruising on his buttocks

21   consistent with the closed-fist punch that he described to her.  She also observed that A.J. had a

22   glistening wet appearance to his rectal area consistent with the lubricant that he described to her.

23   The nurse observed that A.J. had a contusion on the soft pallet of his throat consistent with the

24   forced penile penetration of the mouth that he described to her.  And she observed that A.J. reported

25   being in significant pain.

26        After he was arrested, Alotaibi told police several times during his interview that he did

27   not use any force on A.J.  Alotaibi stated that he had been awake the entire night, had been drinking,

28   and didn't fully remember what happened because he was drunk.  Alotaibi said that A.J. wanted

1    marijuana from him.  Alotaibi admitted that he put his penis into A.J.'s anus for a second or two.

2    Alotaibi also admitted that he put his penis in A.J.'s mouth.

3         **B.    Procedural history**

4         Alotaibi was charged with Burglary, First-degree Kidnapping, two counts of Sexual

5    Assault with a Minor Under the Age of 14, four counts of Lewdness with a Child Under the Age

6    of 14, and Coercion. ECF No. 1-1 at 5–8.  Following a jury trial, Alotaibi was found guilty on all

7    charges except two of the Lewdness counts[5] and sentenced to life in prison with the possibility of

8    parole after 35 years. ECF Nos. 18-19, 20-20.  He appealed, and the Nevada Supreme Court

9    affirmed the judgment of conviction in an *en banc* decision. ECF No. 22-16.

10        Alotaibi then filed a state habeas corpus petition. ECF No. 1-1 at 17–25.  The state district

11   court denied the petition after conducting an evidentiary hearing, and the Court of Appeals of the

12   State of Nevada affirmed that denial. ECF No. 1-1 at 27–47.  The Nevada Supreme Court denied

13   Alotaibi's petition for review in a summary decision. ECF No. 1-1 at 87.

14        Alotaibi timely filed his federal Habeas Corpus Petition on July 6, 2021. *See* ECF No. 1.

15   Respondents answered the Petition. ECF No. 16.  And Alotaibi filed a reply. ECF No. 27.  Alotaibi

16   asserts a single ground for relief: denial of effective assistance of counsel because trial counsel

17   failed to advise him about and request a jury instruction on the lesser-related offense of Statutory

18   Sexual Seduction.

19   **II.    LEGAL STANDARDS**

20        **A.    Antiterrorism and Effective Death Penalty Act (AEDPA)**

21        If a state court has adjudicated a habeas corpus claim on its merits, a federal district court

22   may grant habeas relief on that claim only in limited circumstances.  Habeas relief may be granted

23   if the state court's adjudication "resulted in a decision that was contrary to, or involved an

24   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

25   of the United States[.]" 28 U.S.C. § 2254(d)(1).  Or habeas relief may be granted if the state court's

26

27   _____

28        [5] Alotaibi was found not guilty of Lewdness with a Child Under the Age of 14 under Counts
     4 and 6 and guilty of Lewdness with a Child Under the Age of 14 under Counts 7 and 8. ECF
     No. 18-19 at 3–4.

4

adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at § 2254(d)(2).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts the governing law established in Supreme Court cases or if the decision addresses facts materially indistinguishable from a Supreme Court case but reaches a different conclusion. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Howes v. Fields*, 565 U.S. 499, 505 (2012)). And an "'unreasonable application of' those holdings must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White*, 572 U.S. at 419 (quoting *Lockyer*, 538 U.S. at 75–76). Where no Supreme Court decision squarely addresses "the specific question presented" by a habeas petitioner, the state court's decision cannot be contrary to, or an unreasonable application of, Supreme Court precedent. *Woods v. Donald*, 575 U.S. 312, 317 (2015) (quoting *Lopez v. Smith*, 574 U.S. 1, 4 (2014) (per curiam)); *see also Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008); *but see Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) ("[T]he lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law.") (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To obtain federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 572 U.S. at 419–20 (cleaned up) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see also Yarborough*, 541 U.S. at 664. The Supreme Court has explained "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

1   *Harrington*, 562 U.S. at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563

2   U.S. 170, 181 (2011) (describing the standard as "difficult to meet" and "highly deferential," which

3   "demands that state-court decisions be given the benefit of the doubt" (internal quotation marks

4   and citations omitted)).

5           **B.      Federal habeas review of an ineffective-assistance claim**

6           The Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v.*

7   *Washington*, 466 U.S. 668, 686 (1984), *superseded on other grounds by* AEDPA.  "The benchmark

8   for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the

9   proper functioning of the adversarial process that the trial cannot be relied on as having produced

10  a just result." *Id.*  To establish ineffective assistance of counsel, a petitioner must demonstrate that

11  (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.

12  *Id.* at 687.

13          To prove deficient performance, a petitioner must demonstrate that counsel's

14  representation fell below an objective standard of reasonableness under prevailing professional

15  norms. *Id.* at 688; *see also Yarborough v. Gentry*, 540 U.S. 1 (2003) (per curium); *Bobby v. Van*

16  *Hook*, 558 U.S. 4, 13–14 (2009) (per curium) (Alito, J., concurring) (noting that guidelines such

17  as those promulgated by the American Bar Association, purporting to establish what reasonable

18  attorneys would do, may be helpful but are not the test for determining whether counsel's choices

19  are objectively reasonable).  The relevant inquiry is not what defense counsel could have done, but

20  rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon*, 151

21  F.3d 1170, 1173 (9th Cir. 1998).  "Judicial scrutiny of counsel's performance must be highly

22  deferential. . . .  A fair assessment of attorney performance requires that every effort be made to

23  eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689; *see also Wildman v.*

24  *Johnson*, 261 F.3d 832, 838 (9th Cir. 2001); *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

25  The court "must indulge a strong presumption that counsel's conduct falls within the wide range

26  of reasonable professional assistance; that is, the defendant must overcome the presumption that,

27  under the circumstances, the challenged action might be considered sound trial strategy."

28  *Strickland*, 466 U.S. at 689 (internal quotation omitted).

To establish that counsel's deficient performance prejudiced the defense, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  The defendant must show that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. *Id.* at 688.

Both prongs of the *Strickland* test must be satisfied to establish a constitutional violation; thus, a failure to satisfy either requires that the petitioner's ineffective assistance of counsel claim be denied. *Strickland*, 466 U.S. at 697.  A federal habeas court need not address the prejudice prong of the *Strickland* test "if the petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).  Conversely, the court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.  And where a state court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104–05.

In *Richter*, the U.S. Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).  The Supreme Court further explained that "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III.    DISCUSSION

Alotaibi alleges that he was denied effective assistance because his trial counsel failed to advise him about or request a jury instruction for the uncharged offense of Statutory Sexual

Seduction, a Class C felony. ECF No. 1 at 13.[6]  In its order affirming Alotaibi's conviction, a panel of the Nevada Supreme Court concluded that "statutory sexual seduction was not a lesser-included offense of sexual assault with a minor, and Alotaibi was not entitled to an instruction on it." ECF No. 22-12 at 3.  Alotaibi successfully petitioned for *en banc* reconsideration. ECF Nos. 22-15.  The full Nevada Supreme Court summarized what transpired at trial regarding the instruction:

> In settling jury instructions, Alotaibi requested an instruction on statutory sexual seduction as a lesser-included offense of sexual assault, arguing that evidence indicated the victim consented to the sexual activity.  The district court determined that statutory sexual seduction was not a lesser-included offense because it contained an additional element (the consenting person being under the age of 16) not required by sexual assault.  Noting that there was evidence of consent to support the lesser offense, the district court instead offered to instruct the jury on statutory sexual seduction as a lesser-related offense of sexual assault, but Alotaibi declined such an instruction.

ECF No. 22-16 at 5–6.  After analysis, the Nevada Supreme Court concluded that "statutory sexual seduction is not a lesser-included offense of sexual assault, and Alotaibi was not entitled to an instruction on statutory sexual seduction.  As such, the district court properly refused to instruct the jury on statutory sexual seduction." ECF No. 22-16 at 14.[7]

Next, Alotaibi argued in his counseled state postconviction petition for writ of habeas corpus that he was denied effective assistance of counsel when his trial counsel failed to request a jury instruction on the lesser-related offense of Statutory Sexual Seduction. ECF No. 23-1.  The state court denied the ineffective-assistance claim, concluding that trial counsel's failure to review all jury instructions with Alotaibi fell below the standard of care, but failing to request a jury instruction on the lesser-related offense of Statutory Sexual Seduction did not, as it was a reasonable tactical decision. ECF No. 1-1 at 36–37.  The court also found that *Strickland*'s prejudice prong was not satisfied for any ground that Alotaibi raised. ECF No. 1-1 at 36–39.

---

[6] At the time of the conduct in 2012, Statutory Sexual Seduction was defined to mean: "(a) [o]rdinary sexual intercourse, anal intercourse, cunnilingus or fellatio committed by a person 18 years of age or older with a person under the age of 16 years; or (b) [a]ny other sexual penetration committed by a person 18 years of age or older with a person under the age of 16 years with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of either of the persons." Nev. Rev. Stat. § 200.364(5) (2009).

[7] The Court notes that there is no federal constitutional right to jury instructions on lesser-related offenses in noncapital cases. *See Hopkins v. Reeves* 524 U.S. 88, 96–98 (1998); *United States v. Rivera-Alonzo*, 584 F.3d 829, 834 n.3 (9th Cir. 2009).

The court explained there wasn't a reasonable probability of a different trial outcome because the jury was not presented with the binary option of either convicting Alotaibi of a severe offense for the penetrative acts or acquitting him. ECF No. 1-1 at 36–39. Rather, the jury had the option of finding Alotaibi guilty on Counts 4 and 6 for Lewdness with a Child Under the Age of 14 for those acts if it credited his consent defense. ECF No. 1-1 at 36–37. But the jury rejected the consent defense for the penetrative acts when it convicted Alotaibi of Sexual Assault with a Minor Under the Age of 14 and found him not guilty of Lewdness with a Child Under the Age of 14. ECF No. 1-1 at 36–37.

The Nevada Court of Appeals affirmed the denial of habeas relief, explaining that Alotaibi had failed to satisfy *Strickland*'s prejudice prong because he provided no evidence at the evidentiary hearing that he would have agreed to instruct the jury on the uncharged Statutory Sexual Seduction offense:

> Alotaibi argues the district court erred by denying his claim of ineffective assistance of counsel raised in his November 28, 2018, postconviction petition for a writ of habeas corpus and supplement. To demonstrate ineffective assistance of trial counsel, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). Both components of the inquiry must be shown, *Strickland*, 466 U.S. at 687, and the petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004).
>
> Alotaibi argued his trial counsel was ineffective for failing to discuss with him whether they should have requested a jury instruction for a lesser-related offense. At the evidentiary hearing conducted in the matter, Alotaibi did not present evidence regarding whether he would have agreed to request such an instruction. Thus, Alotaibi did not demonstrate by a preponderance of the evidence that he would have agreed to request such an instruction. Therefore, he did not demonstrate a reasonable probability of a different outcome at trial but for counsel's failure to discuss this issue with him.

ECF No. 1-1 at 41–42. The Nevada Court of Appeals denied Alotaibi's petition for rehearing. ECF No. 1-1 at 64. And the Nevada Supreme Court denied Alotaibi's petition for review. ECF No. 1-1 at 87.

Prejudice is the only prong of *Strickland* that the Nevada Court of Appeals addressed. However, this Court begins its analysis of Alotaibi's claim with the deficient-performance prong.

1

### A.    Deficient Performance

2    Because the Nevada Court of Appeals did not reach the issue of whether trial counsel's

3 performance was deficient, AEDPA does not apply and this Court reviews it *de novo*. *See Rompilla*

4 *v. Beard*, 545 U.S. 374, 390 (2005).  "[D]eficient performance is performance that falls 'below an

5 objective standard of reasonableness' and is outside of 'the range of competence demanded of

6 attorneys in criminal cases.'" *Smith v. Baker*, 983 F.3d 383, 396 (9th Cir. 2020) (quoting

7 *Strickland*, 466 U.S. at 687–88).  "The objective measure of counsel's performance is determined

8 by looking at the 'reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*,

9 466 U.S. at 688).  "Professional norms are measured at the time of counsel's actions rather than

10 by reference to modern norms." *Id.* (citing *Cullen*, 563 U.S. at 196).  "This assessment is made

11 'from counsel's perspective at the time,' so as 'to eliminate the distorting effects of hindsight.''

12 *Id.* (quoting *Strickland*, 466 U.S. at 689).

13    The Supreme Court has recognized that "[d]efense counsel undoubtedly has a duty to

14 discuss potential strategies with the defendant." *Florida v. Nixon*, 543 U.S. 175, 178 (2004).  This

15 duty entails "consult[ing] with the client regarding 'important decisions,' including questions of

16 overarching defense strategy." *Id.* at 187.  But it "does not require counsel to obtain the defendant's

17 consent to every tactical decision." *Id.* (cleaned up).  Rather, a defendant "has the ultimate

18 authority to determine whether to plead guilty, waive a jury, testify in his or her own behalf, or

19 take an appeal." *Id.* (cleaned up).

20    Habeas courts "'defer to a lawyer's strategic trial choices, but those choices must have been

21 made after counsel conducted reasonable investigations or made a reasonable decision that made

22 particular investigations unnecessary.'" *Smith*, 983 F.3d at 396–97 (cleaned up) (quoting

23 *Summerlin v. Schriro*, 427 F.3d 623, 630 (9th Cir. 2005)).  Counsel's "tactical decision may

24 constitute constitutionally adequate representation even if, in hindsight, a different defense might

25 have fared better." *Bemore v. Chappell*, 788 F.3d 1151, 1163 (9th Cir. 2015).

26    Habeas courts "must indulge a strong presumption that counsel's conduct fell within the

27 wide range of reasonable professional assistance and presume that under the circumstances, the

28 challenged action might be considered sound trial strategy." *Carter v. Davis*, 946 F.3d 489, 516

(9th Cir. 2019) (cleaned up) (quoting *Strickland*, 466 U.S. at 689).  "*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington*, 562 U.S. at 110 (quoting *Strickland*, 466 U.S. at 687).  "There is a 'strong presumption' that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'" *Id.* at 109 (quoting *Yarborough*, 540 U.S. at 8).  "A trial attorney's failure to request a jury instruction receives no deference, however, when it is based on "a misunderstanding of the law" rather than "a strategic decision to forgo one defense in favor of another.'" *Crace v. Herzog*, 798 F.3d 840, 852 (9th Cir. 2015) (cleaned up) (quoting *United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996)).

Alotaibi argues that trial counsel's failure to advise him about and request a jury instruction on the lesser-related offense of Statutory Sexual Seduction is based on a misunderstanding of the law.  Trial counsel testified at the postconviction evidentiary hearing that he mistakenly believed the penalty for that offense was one to ten years not the actual one to five years. ECF No. 1-6 at 173.  However, trial counsel assumed that the court would sentence Alotaibi to only four years on each count of that offense, for a total of 8 years. ECF No. 1-6 at 175.  Alotaibi had already rejected a plea offer of ten years, and trial counsel didn't see much difference between 8 and 10 years, so he didn't consult with Alotaibi about seeking an instruction. ECF No. 1-6 at 175.

However, having reviewed the full record, the Court finds that trial counsel's failure to request an instruction on Statutory Sexual Seduction was a strategic decision to forgo one defense in favor of others, not based on a misunderstanding about the law, and therefore demands deference.  Trial counsel testified during the postconviction evidentiary hearing about the strategic reasons why he didn't ask for the instruction.  He really believed in Alotaibi's innocence, and there was more than enough evidence of A.J.'s consent for Alotaibi to prevail on the Sexual Assault charges. ECF No. 1-6 at 175.  He also understood that neither consent nor intoxication were defenses to Statutory Sexual Seduction. ECF No. 1-6 at 165–66.

Importantly, trial counsel understood that "the issue with consent is different than" other issues and an "inconsistent argument[,]" so the defense needed "to stick with one theme and one strategy even though . . . the outcome could have been . . . much harsher. ECF No. 1-6 at 175–76.

And he recognized arguing that the penetrative acts were consensual and obtaining a Statutory Sexual Seduction instruction was tantamount to conceding that Alotaibi was guilty of Statutory Sexual Seduction. ECF No. 1-6 at 211. Thus, during the trial but before settling jury instructions, trial counsel and Alotaibi "went around and around . . . about the statutory sexual seduction jury instruction as to what [the trial court] would do and, you know, how [the defense] would go about arguing it in closing argument." ECF No. 1-5 at 21.

Trial counsel tried to get the State to offer a plea for Statutory Sexual Seduction early in the case, but it refused to do so. ECF No. 1-6 at 172. So, trial counsel believed that Alotaibi had "nothing to lose" going to trial seeking a complete acquittal on defenses that Alotaibi was intoxicated and A.J. had consented to the penetrative acts. ECF No. 1-6 at 172–73, 195. After A.J. testified for the first time at trial that he had audibly withdrawn his consent, trial counsel encouraged Alotaibi to testify and thus provide the jury evidence that A.J. had not withdrawn his consent. ECF No. 1-6 at 197–98. But Alotaibi wasn't willing to testify. ECF No. 1-6 at 176. Trial counsel believed that Alotaibi wasn't "willing to listen and reason with [him] on various things as to what [they] wanted. [Alotaibi's] goal was to go home as soon as possible. And [Alotaibi] believed that he was going to go home." ECF No. 1-6 at 176.

After the defense rested its case, trial counsel concluded that an instruction on Statutory Sexual Seduction was not necessary if he could argue in closing that consent is a defense to the sexual assault charges and "intoxication [is a defense] for lewdness and all the other charges . . . ." ECF No. 1-5 at 194–95. Counsel for the parties confirmed that they had provided stipulated jury instructions on consent and intoxication for the trial court to review. ECF No. 1-5 at 195–96. Before closing arguments, trial counsel moved to dismiss Counts 4 and 6 for Lewdness with a Child Under the Age of 14, arguing that they had been negated by A.J.'s testimony that the penetrative acts did not have associated touching or fondling. ECF No. 1-6 at 4–5.

But the trial court denied the motion, finding that the State was permitted to plead Lewdness with a Child Under the Age of 14 in the alternative to Sexual Assault with a Minor Under the Age of 14 for the penetrative acts. ECF No. 1-6 at 5–6. Trial counsel then sought clarification that the State would not object to defense arguing in closing that "consent is a defense

to sexual assault" and "intoxication is a defense to lewdness with a minor . . . ." ECF No. 1-6 at 6. The State agreed there was no objection, and the State and trial court confirmed that if the jury believed that A.J. consented to the acts and Alotaibi was intoxicated, then Alotaibi "could potentially end up with a not guilty." ECF No. 1-6 at 6–7.

Alotaibi's characterization that this was an all-or-nothing strategy for the penetrative acts is unpersuasive. *See* ECF No. 1 at 23. The record shows that for the penetrative acts, the jury had the option of (1) convicting Alotaibi of Sexual Assault with a Minor Under the Age of 14, (2) convicting Alotaibi of Lewdness with a Child Under the Age of 14, or (3) exonerating Alotaibi. *See* ECF No. 1-1 at 37. The record demonstrates that the defense never intended to present the offense of Statutory Sexual Seduction to the jury. Rather, the defense sought a complete acquittal using consent and intoxication as defenses to all the charged offenses.

The Court finds this was a sound trial strategy given the circumstances. *Cf. Crace*, 798 F.3d at 852 (recognizing that even an "'all-or-nothing' strategy, forcing the jury to choose between convicting on a severe offense and acquitting the defendant altogether" can be "reasonable" "[i]n certain circumstances"). The jury was not placed in an all-or-nothing position on the penetrative acts. It could have convicted Alotaibi of the Lewdness charges for those acts if it credited his consent defense. Alotaibi could have been exonerated if the jury credited his consent and intoxication defenses. But instructing the jury about Statutory Sexual Seduction very well would have foreclosed the possibility of exoneration because neither consent nor intoxication were defenses to that offense. And the jury had evidence supporting both of Alotaibi's defenses.

A witness testified that Alotaibi had been drinking and smoking marijuana before the offenses. ECF No. 1-4 at 34–38, 61–63, 65–68. The jury heard testimony that Alotaibi could have believed that A.J. consented to the conduct. ECF No. 1-2 at 48–54. A.J. testified that he verbally withdrew his consent. ECF No. 1-2 at 26–27. But A.J. also testified that he fabricated details when reporting the event to detectives, thus raising issues about his credibility. ECF No. 1-2 at 46–47.

Alotaibi has failed to demonstrate that trial counsel's performance was objectively unreasonable. Although this finding is fatal to Alotaibi's claim for federal habeas relief, the Court will also consider his arguments about the prejudice-prong of the *Strickland* analysis.

13

1        **B.        Prejudice**

2             The Nevada Court of Appeals determined that Alotaibi did not demonstrate a reasonable

3    probability of a different outcome at trial because he did not present evidence that he would have

4    agreed to instruct the jury on the lesser-related offense of Statutory Sexual Seduction.  Alotaibi

5    argues that AEDPA does not bar habeas relief because the Nevada Court of Appeals' decision was

6    based on an unreasonable determination of the facts in the state record. ECF No. 1 at 21–23.

7    "[W]hether petitioner's conviction 'was based on an unreasonable determination of the facts in

8    light of the evidence presented in the State court proceeding.' . . . is a daunting standard—one that

9    will be satisfied in relatively few cases." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004),

10   *overruled on other grounds by Pinholster*, 563 U.S. at 184–86 & nn. 7, 10.  But the standard is not

11   impossible to meet. *Id.* (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).   "Intrinsic

12   challenges to state-court findings [under] the 'unreasonable determination' standard come in

13   several flavors, each presenting its own peculiar set of considerations." *Id.*

14           Alotaibi argues that the Nevada court ignored or overlooked that: (1) the jury heard

15   evidence that Alotaibi confessed to police that he penetrated A.J.'s mouth and anus with his penis;

16   (2) the jury was presented with an all-or-nothing option for the penetrative acts even if it credited

17   his consent defense; (3) the jury heard evidence that could have allowed it to discredit A.J.'s

18   testimony about force; (4) the jury heard evidence that could have allowed it to credit Alotaibi's

19   consent defense; and (5) the disparity between the sentence for Sexual Assault with a Minor Under

20   the Age of 14 (life with the possibility for parole after 35 years) and Statutory Sexual Seduction

21   (one to five years) is enormous. ECF No. 1 at 23–24.  When considering this kind of claim, courts

22   must be "mindful that the state courts are not required to address every jot and tittle of proof

23   suggested to them, nor need they 'make detailed findings addressing all the evidence before'"

24   them. *Taylor*, 366 F.3d at 1001 (quoting *Miller-El*, 537 U.S. at 347).   "To fatally undermine the

25   state fact-finding process, and render the resulting finding unreasonable, the overlooked or ignored

26   evidence must be highly probative and central to petitioner's claim." *Id.*   "In other words, the

27   evidence in question must be sufficient to support petitioner's claim when considered in the

28   context of the full record bearing on the issue presented in the habeas petition." *Id.*

Alotaibi's second item of objective evidence is factually wrong.  As discussed above, the jury was not presented with an all or nothing option for the penetrative acts.  Rather, if the jury credited Alotaibi's consent defense it could have convicted him of Counts 4 and 6 for Lewdness with a Child Under the Age of 14.

As for Alotaibi's remaining evidence, trial counsel declared that "during [his and Alotaibi's] discussions regarding jury instructions, [Alotaibi] expressed an inability to understand the nature, significance in context, and potential implications of a waiver of the lesser-related Statutory Sexual Seduction instruction offered by the trial court." ECF No. 23-1 at 65.  "[W]ith respect to the jury instructions," trial counsel testified that Alotaibi said, "you are the lawyer, you make the decisions for me and that's what [counsel] did." ECF No. 1-6 at 177.  Trial counsel also testified that Alotaibi's "goal was to go home as soon as possible.  And he believed that he was going to go home." ECF No. 1-6 at 176.

Trial counsel testified that a complete acquittal was possible without the instruction on Statutory Sexual Seduction. ECF No. 1-6 at 202.  Neither consent nor intoxication are defenses to that offense, so Alotaibi agreeing to instruct the jury on Statutory Sexual Seduction was therefore tantamount to him agreeing to be convicted of that offense. ECF No. 1-6 at 201–02.  Trial counsel testified that the evidence for Alotaibi was "strong" enough to raise a reasonable doubt on the charges. ECF No. 1-6 at 203.  And counsel believed "that there was more than enough evidence in the record for [Alotaibi] to have won the consent issue with respect to sexual assault." ECF No. 1-6 at 175.

Considering the whole record, including the absence of any affirmative act or statement from Alotaibi or trial counsel that Alotaibi would have agreed to the Statutory Sexual Seduction jury instruction, the Court concludes that the objective evidence Alotaibi raises is not highly probative of his claim that he would have agreed to a jury instruction on that offense—and thus agreed to be convicted of it—instead of seeking a complete acquittal based on his consent and intoxication defenses.  The Nevada Court of Appeals determined that Alotaibi could not show a reasonable probability that the outcome of trial would have been different because he did not provide subjective evidence that he would have agreed to instruct the jury on a lesser-related

1    offense.  This decision was not based on an unreasonable determination of the facts considering

2    the entire state court record.  Thus, AEDPA's requirements have not been met as to the prejudice-

3    prong of the *Strickland* analysis.  And Alotaibi is denied habeas relief on his claim.

4           The ultimate outcome would be the same even if the Court considered prejudice under a

5    *de novo* standard of review.  The parties do not cite authority that addresses *Strickland* prejudice

6    in the context of trial counsel's failure to advise about and request a lesser-related instruction.

7    Instead, Alotaibi cites cases from other circuits analyzing *Strickland* prejudice in the guilty-plea

8    context. ECF No. 1 at 18.  Supreme Court precedent on the subject requires a petitioner to "show

9    [that] the outcome of the plea process would have been different with competent advice." *Lafler*,

10   566 U.S. at 164.

11          Alotaibi's claim is more akin to when counsel's ineffective advice leads a defendant to

12   deny a plea offer, rather than improvidently accept one.  So, to satisfy *Strickland*'s prejudice prong

13   under a *de novo* review, Alotaibi must show a reasonable probability that he would have agreed to

14   request a jury instruction on the Statutory Sexual Seduction offense, the trial court would have

15   allowed the instruction, and the conviction or sentence would have been less severe than what was

16   imposed. *See id.*  Alotaibi cannot demonstrate that his sentence would have been less severe than

17   what was imposed had the jury been instructed about the Statutory Sexual Seduction offense.  The

18   State correctly summarized the flaw with Alotaibi's argument about this issue in the postconviction

19   evidentiary hearing:

20
           The jury rejected the defense of consent.  They rejected the defense.  [Alotaibi]
21         needed consent to get to statutory sexual seduction.  [Alotaibi] needed consent to
           walk on sexual assault.  The jury rejected consent.  Merely giving an instruction on
22         a lesser related [offense] that still requires consent doesn't change the fact finding.
           The jury rejected consent, therefore [Alotaibi suffered] no prejudice and [trial
23         counsel's] strategy was objectively reasonable.

24   ECF No. 1-6 at 228.

25          Alotaibi's incorrect insistence that the jury was given an all-or-nothing option on the

26   penetrative acts is not enough to undermine confidence in the outcome of the trial.  In sum, the

27   jury was given the option to convict Alotaibi on the lesser-related Lewdness charges for the

28   penetrative acts if it credited his consent defense.  But the jury rejected Alotaibi's consent defense

and convicted him on the Sexual Assault charges.  The jury also rejected Alotaibi's intoxication defense and found him guilty on Counts 7 and 8 for Lewdness with a Child Under the Age of 14 for other acts. ECF No. 18-19 at 4.  Alotaibi was sentenced to Life with a Parole Eligibility after 10 years for those offenses, which run concurrently. ECF No. 20-20 at 3.   Given these circumstances, it is not plausible that the jury would have convicted Alotaibi of Statutory Sexual Seduction for the penetrative acts if it had been given that option.

## IV.    CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).  Applying this standard, the Court finds that a certificate of appealability is not warranted in this case.  The Court therefore denies Alotaibi a certificate of appealability.

## V.    CONCLUSION

**IT IS THEREFORE ORDERED** that Alotaibi's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED** on the merits.[8]

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court will **SUBSTITUTE** Nethaniah Breitenbach for Respondent State of Nevada, enter final judgment accordingly, and close this case.

DATED:  April 8, 2024

GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE

---

[8] At the conclusion of his petition, Alotaibi generally asks the Court to "[c]onduct an evidentiary hearing at which proof may be offered concerning the allegations in this petition and any defenses that may be raised by respondents." ECF No. 1 at 24–25.  The Court denies Alotaibi's request because he has not demonstrated that he is entitled to an evidentiary hearing. *See Williams v. Taylor*, 529 U.S. 420 (2000) (explaining standard for federal habeas court to consider new evidence); *Shinn v. Ramirez*, 596 U.S. 366 (2022) (same).

17